**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**FILED**

**DEC 1 7 2009**

CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

In re:

MICHAEL LESHAWN BANKS,                    Case No. 6:08-bk-07885-ABB
                                          Chapter 7
        Debtor.

_____/

PATINA, INC.,

        Plaintiff,                        Adv. Pro. No. 6:08-ap-00230-ABB

v.

MICHAEL LESHAWN BANKS,

        Defendant.

_____/

## MEMORANDUM OPINION

This matter came before the Court on the: (i) Complaint Objecting to Discharge of Debtor (Doc. No. 1) ("Complaint") filed by the Plaintiff Patina, Inc. ("Plaintiff") against Michael Leshawn Banks, the Defendant and Debtor herein ("Debtor"), seeking a denial of the Debtor's discharge pursuant to 11 U.S.C. Section 727(a); (ii) the Debtor's Counterclaims (Doc. No. 6) seeking sanctions against Plaintiff for alleged conversion and violation of the automatic stay; and (iii) the Debtor's Objection to Plaintiff's proof of claim (Main Case Doc. No. 33), which was consolidated with this adversary proceeding pursuant to the Order entered on September 15, 2009 (Doc. No. 58).

The final evidentiary hearing was held on August 25 and August 26, 2009 at which the Debtor, counsel for the Debtor, Plaintiff's principal Nancy Fleming, counsel for Plaintiff, and the Chapter 7 Trustee Marie E. Henkel ("Trustee") appeared. Judgment

is due to be entered in favor of the Debtor on Counts I through V of the Complaint and his claim objection is due to be sustained in part. Judgment is due to be entered in favor of Plaintiff on Counts I and II of the Counterclaim. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

### *Marcia Weber Deposition Transcript Designations*

The parties, pursuant to the Court's directive, filed deposition transcript designations and post-hearing briefs (Doc. Nos. 54, 55, 56, 57, 60). Plaintiff designates numerous portions of the deposition transcript of Marcia Weber and requests the admission of the exhibits attached to her deposition transcript labeled Exhibit Numbers 14, 25, 35, 46, 37, 41, and 94 pursuant to Federal Rule of Evidence 801(6) (Doc. No. 54). The Debtor objects to virtually all of the deposition designations on various grounds including relevancy, vagueness, and lack of predicate (Doc. No. 55). He objects to the admissibility of the exhibits primarily on hearsay and lack of predicate grounds.

The Debtor designates numerous portions of Weber's deposition transcript (Doc. No. 56). Plaintiff does not object to such designations. The Debtor's objections to Plaintiff's designations and exhibits are overruled. The complete transcript of Weber's deposition and Exhibit Nos. 14, 25, 35, 46, 37, 41, and 94 attached to the deposition transcript are admitted into evidence as Plaintiff's composite Exhibit No. 87.

### **FINDINGS OF FACT**

### *Introduction*

The Debtor is a thirty-seven year old self-taught artist from northern Alabama. His folk art paintings have been exhibited in national exhibitions and galleries in

Alabama. He has struggled with alcohol and drug addictions for ten years. He discussed his difficulties with candor. His difficulties have caused him to be easily manipulated. Plaintiff, a gallery in Fairhope, Alabama, has been aggressively pursuing the Debtor, asserting it has an exclusivity contract with him. The Debtor, having no other options available to him, sought bankruptcy protection. Plaintiff continues to aggressively pursue the Debtor and seeks a denial of his discharge.

*Pre-petition Events*

The Debtor sells his paintings to galleries through consignment and outright sales. He, in an outright sale, typically sells a series of paintings for a fixed price, referred to as the "wholesale price." He sets the consignment prices for his works and negotiates the sale prices for the outright sales. The consignment sale prices are higher than the outright sales prices, due to the inclusion of a commission for the consignment gallery. The common consignment percentage is 50/50; the consignment gallery retains fifty percent of the sale price and the Debtor receives fifty percent. His works vary in size and the larger pieces garner a higher value. His artwork is worth what a purchaser is willing to pay.

The Debtor had relationships with Plaintiff and Marcia Weber, who owns the Marcia Weber Art Objects, Inc. gallery in Montgomery, Alabama. Plaintiff is owned by Nancy Fleming ("Fleming") and managed by James Wilmoth ("Wilmoth"), who is a director of Plaintiff. Fleming and Wilmoth have worked together for more than twenty-five years. The Debtor sold paintings to Plaintiff and Weber on consignment and through outright sales.

The Debtor testified at length and was credible. He was respectful and composed, in spite of Plaintiff's aggressive stance, throughout this proceeding. He discussed how his drug and alcohol addictions caused the demise of his marriage to Jennifer Banks ("Mrs. Banks") and estrangement from his two minor children. For stretches of time he has been homeless, living on the street. He has spent significant amounts of time in rehabilitation facilities and at the time of trial had completed seven months of a twelve-month rehabilitation program in Sanford, Florida.

The Debtor suffers from memory lapses resulting from his addictions. He has pawned most of his assets, maintained few financial records, and does not recall the whereabouts of many of his paintings. He has gifted many of his paintings to individuals. The Debtor has received assistance from several persons. Some have acted as agents, assisting him with marketing and selling his paintings, and some as benefactors providing him with money, shelter, and necessities. Not all have acted with good intentions and have taken advantage of him. Many of his paintings are missing.

### *Relationship with Plaintiff*

Wilmoth met the Debtor at a folk art exhibition in 2006 and he introduced the Debtor to Fleming in August 2006. She was impressed with his work and wanted to feature him in her gallery. The Debtor provided paintings to Plaintiff on a consignment basis and through outright sales. Their verbal consignment arrangement was a 50/50 split of the sale proceeds of a consigned piece. Plaintiff held a show for the Debtor in March 2007, which was highly successful resulting in the sale of ten to twelve pieces of the Debtor's artwork. Plaintiff and the Debtor planned future shows and intended to have an on-going relationship.

Plaintiff knew the Debtor had drug and alcohol addictions. The Debtor and Mrs. Banks on occasion asked Fleming for money and she gave money to them, which they repaid. Fleming and Wilmoth gave the Debtor food, art supplies, and cash from time to time.

The Debtor's unstable behavior and "irrational disposal of artworks" caused Mrs. Banks to institute in 2006 a divorce proceeding against the Debtor (Debtor's Ex. 5) and a civil injunctive action against the Debtor, Weber, and her gallery (Id.).[1] The Alabama State Court entered an Order on November 9, 2006 prohibiting Weber and her gallery from selling, destroying or disposing of any of the Debtor's artwork (Id.). Plaintiff was subsequently joined as a party defendant in the litigation captioned *Jennifer Leigh Banks v. Michael LeShawn Banks, Marcia Weber, Marcia Weber-Art Objects, Inc., Patina, Inc., and Anissa Banks*, Civil Action No. DR06-200419.01 (Id.).

Mrs. Banks and the Debtor entered into a Settlement Agreement on January 22, 2007 in which they globally resolved the marital and injunctive issues. The Settlement Agreement was executed by Mrs. Banks and the Debtor and filed in Civil Action No. DR06-200419.01. Mrs. Banks, pursuant to the Settlement Agreement, was:

(i)     granted sole custody of the children;

(ii)    granted exclusive right and possession to the marital home located in Albertville, Alabama;

(iii)   appointed the Debtor's "exclusive agent to handle all financial matters in relation to defendant's artwork, including but not limited to the arrangement of art shows displaying defendant's artwork, the arrangement of private sales of defendant's artwork and the receipt of all revenue derived from the sale of defendant's

---

[1] The parties' briefs indicate Mrs. Banks instituted two separate civil proceedings in the Circuit Court of Marshall County, Alabama. The Alabama State Court pleadings presented reference Civil Action No. DR06____ and Civil Action No. DR06-200419.01; they do not elucidate whether two separate civil proceedings were instituted by her.

artwork." Debtor agreed "that he shall not be authorized to receive any income from the sale of his artwork for a period of one year and that all sums shall be paid directly to plaintiff for management and investment";

(iv)   entitled to use the sales proceeds for support of herself, the children, and the Debtor, "to be determined at plaintiff's discretion."

(Debtor's Ex. 5). Plaintiff, Weber, and Weber's gallery are named as party defendants in the case caption of the Settlement Agreement. Paragraph 7 of the Settlement Agreement provides:

This Agreement *shall be binding upon the parties* for one year. Any vendors of defendant's artwork or any person purchasing defendant's artwork may rely on this Agreement in paying the sales price for the artwork directly to plaintiff.

(Id., ¶7, *emphasis added*). The Alabama State Court approved the Settlement Agreement and incorporated it into the Judgment of Legal Separation entered on June 6, 2007 in Civil Action No. DR06-200419.01 (Id.). Plaintiff is named as a party defendant in the case caption of the June 6, 2007 Judgment. The Settlement Agreement and June 6, 2007 Judgment were served on Plaintiff.

Mrs. Banks, pursuant to the Settlement Agreement and Judgment, handled all of the Debtor's financial affairs, including providing information to an accountant for the preparation of their joint 2006, 2007, and 2008 Federal income tax returns (Debtor's Ex. 2, 3). Plaintiff knew Mrs. Banks controlled the Debtor's financial affairs.

Plaintiff desired to have an exclusive relationship with the Debtor whereby Plaintiff would obtain and sell all of the Debtor's artwork. Wilmoth, on or about May 9, 2007, drove to the Debtor's home in Albertville, Alabama, a five-hour drive from

Fairhope.  Wilmoth, at the Debtor's home, drafted a one-page handwritten agreement dated May 9, 2007 which the Debtor and Wilmoth executed:

> Michael Banks and Patina Gallery hereby agree that in addition to Patina's exclusivity for Mr. Banks works within a 200 mile radius of Fairhope that Patina will arrange for three additional shows for Mr. Banks within the next year for which Mr. Banks will supply 30+ paintings and at least 6 large (= 4' x 4') for each show. Patina will notify Michael at least 30 days in advance and shall work with Mr. Banks to avoid conflicts with other shows already previously booked.  Mr. Banks and Patina agree to keep communications open and to stay in touch regularly.

(Plaintiff's Ex. 8).  Plaintiff, despite knowing Mrs. Banks controlled the Debtor's finances, did not make her a party to the May 9, 2007 agreement.  Mrs. Banks was a necessary party to any agreement between Plaintiff and the Debtor pursuant to the January 22, 2007 Settlement Agreement and the June 6, 2007 Judgment.

Wilmoth and Fleming had discussed the terms of the agreement prior to Wilmoth's trip to Albertville, but they did not prepare a written contract for him to present to the Debtor.  The Debtor's ability to enter into a contract was questionable based upon his history.  The Debtor executed no other agreements with Plaintiff.

The relationship between Debtor and Plaintiff deteriorated.  Plaintiff scheduled a show for the Debtor in Atlanta and he failed to appear.  Plaintiff rejected some pieces the Debtor presented to it.  The Debtor refused to provide artwork to Plaintiff.  He entered the Serenity Care rehabilitation facility in Mobile, Alabama and was unable to produce artwork or have showings for significant periods of time.

Wilmoth and Fleming made trips to Albertville to investigate the Debtor's whereabouts.  They hired a private investigator to determine whether the Debtor was exhibiting at art shows.  Plaintiff instituted a civil action in 2007 in the Alabama State Court ("Patina Litigation") against the Debtor, Mrs. Banks, and Melvin Richardson, the

owner of Serenity Care, contending, primarily, the Debtor breached alleged verbal agreements and the May 9, 2007 agreement. An Order was entered on May 22, 2008 awarding Plaintiff attorneys' fees and costs of $13,435.80 against the Debtor and Mrs. Banks jointly and severally for their failures to respond to discovery.

### *Bankruptcy Filing and Post-Petition Events*

The Debtor moved to Sanford, Florida in January 2008 while the Patina Litigation was pending. He lives in an apartment located at 213 First Street, No. 8, Sanford, Florida 32771 in a building owned by Howard S. Marks, Esquire ("Marks"). The building has an art gallery on the ground floor, the Jeanine Taylor Folk Art Gallery; Marks has an ownership interest in the gallery and is an art collector. Marks represented the Debtor in the Patina Litigation and is a collector of his artwork. Plaintiff knew the Debtor had moved to Florida and its State Court counsel had on-going communications with Marks (Debtor's Ex. 14, 15, 16, 17, 18, 20).

The Debtor, through bankruptcy counsel, filed a Chapter 7 bankruptcy case on September 4, 2008 ("Petition Date") and the automatic stay of 11 U.S.C. Section 362(a) immediately arose by operation of law staying the Patina Litigation. Marks faxed a letter to Plaintiff's State Court counsel on the Petition Date advising him of the bankruptcy filing. Plaintiff knew on the Petition Date the Debtor had filed for bankruptcy. Plaintiff filed a Suggestion of Bankruptcy in the Patina Litigation on September 8, 2008 (Plaintiff's Ex. 55). Plaintiff took no further action in the Patina Litigation. No final judgment on the merits was rendered by the Alabama State Court in the Patina Litigation.

Plaintiff continued to investigate the Debtor post-petition. Wilmoth, in October 2008 and with Fleming's knowledge, drove Fleming's car to Sanford, Florida. He, with

8

an unidentified woman, attended a function at the Jeanine Taylor Folk Art Gallery on October 24, 2008. He took pictures of the Debtor's artwork in the gallery and the exterior of Marks' building (Plaintiff's Ex. 32). Marks confronted Wilmoth and asked him to leave the property. Marks instituted a Florida State Court civil proceeding against Wilmoth and Fleming for trespass (Plaintiff's Ex. 75, 76).

### Bankruptcy Case Events and Disclosures

Marie E. Henkel is the Chapter 7 Trustee ("Trustee") and conducted the Debtor's 11 U.S.C. Section 341 meeting of creditors on October 16, 2008 and October 30, 2008. No challenges to the Debtor's bankruptcy filing have been made pursuant to 11 U.S.C. Section 707(b) and no transfer recovery or turnover actions have been instituted. No party has filed a motion to transfer venue. Plaintiff is the only party to have instituted an adversary proceeding. Plaintiff did not initiate an 11 U.S.C. Section 523(a) nondischargeability proceeding. The Trustee testified she has no intention of instituting any adversary proceedings. The Debtor has cooperated with the Trustee throughout his Chapter 7 case and has complied with all filing requirements.

*Schedules A and B:* The Debtor owns no real property. He listed assets valued at $40,500.00 in Schedule B consisting of:

(i)      Checking account valued at $0.00;

(ii)     Bed, washer, dryer valued at $75.00;

(iii)    Clothing valued at $50.00;

(iv)    An account receivable owed by Plaintiff of $5,175.00;

(v)     An account receivable owed by Weber of $8,000.00;

(vi)    2006 Mercedes 240 in Mrs. Banks' possession valued at $6,000.00;

(vii)   Three paintings entitled "Taming the Minde Beast," "Plastig," and "Atomic Number" on consignment with Weber valued at $1,200.00;

(viii)  Five paintings held by Patina valued at $20,000.00; and

(ix)    Twenty paintings designated by number codes held in storage with no value listed.

(Main Case Doc. No. 8). He amended Schedule B to include a 1993 Volvo 940 with a value of $0.00 (Main Case Doc. No. 14).

*Schedule C:* The Debtor claimed the bed, washer, dryer, and accounts receivable as exempt. The exemption claims are unopposed (Main Case Doc. No. 30).

*Schedules D and E:* He listed Family Security Credit in Schedule D, which holds a security interest in the Mercedes, and no unsecured priority claims in Schedule E.

*Schedule F:* He listed general unsecured claims of $217,988.87. The largest general unsecured debt is Plaintiff's claim, Claim No. 8-1, for $119,210.80 with the remaining debts consisting of credit card, medical, legal debts, and a loan of $20,000.00 from Marks for rent and living expenses. The claims bar date has passed and no secured or priority unsecured claims have been filed. General unsecured claims totaling $163,406.87 are pending, which includes Plaintiff's disputed claim.

*Schedules G and H:* The Debtor listed "None" in Schedule G for executory contracts and unexpired leases. He listed no co-debtors in his original Schedule H and filed an Amended Schedule H listing Mrs. Banks as a co-debtor of the Family Security Credit vehicle debt (Main Case Doc. No. 16).

*Schedules I and J:* Schedule I sets forth estimated gross monthly income of $2,916.00 based upon the Debtor's previous artwork sales. He was unemployed on the Petition Date (Main Case Doc. No. 10) and remained unemployed throughout the trial.

He listed monthly expenses of $4,445.00 in Schedule J. He is represented primarily on a *pro bono* basis by his bankruptcy counsel and Marks in the adversary proceeding (Main Case Doc. No. 12).[2]

**Statement of Financial Affairs:** The Debtor listed in his Statement of Financial Affairs ("SOFA") gross income of $52,268.00 in 2006, $40,000.00 approximately in 2007, and $35,000.00 approximately from January 2008 through September 2009 (Main Case Doc. No. 8). He stated "None" for pre-petition payments to creditors, transfers, gifts, and losses. He listed the Albertville, Alabama address as his address from 2003 to 2006.

The Trustee declared this case an asset case and as of August 26, 2009 had collected $18,942.64 from the liquidation of estate assets (Plaintiff's Ex. 71), including accounts receivable and sale proceeds turned over by Weber and an account receivable of $5,175.00 turned over by Plaintiff. She estimates the Debtor will receive $8,000.00 of this recovery for his allowed claims of exemption. Additional funds are expected through the post-petition sales of paintings held by Weber and Plaintiff.

The Trustee engaged Weber to assist her in selling the Debtor's three paintings located in Weber's Gallery: (i) #9570 "Taming the Minde Beast"; (ii) #9700 "Plastig"; and (iii) #9715 "Atomic Number" (Main Case Doc. Nos. 36, 39). The appraised values of the paintings (unframed) are, respectively, $720.00, $640.00, and $400.00. Weber is to be compensated the cost of framing plus fifty percent of the net sale price. Plaintiff did not oppose Weber's employment. Weber withdrew her general unsecured proof of claim

---

[2] Bankruptcy counsel's Federal Rule of Bankruptcy Procedure 2016(b) Statement of Compensation (Main Case Doc. No. 12) sets forth counsel received $91.00 from Marks pre-petition and the Debtor has agreed to pay counsel "fees on a contingent basis . . . [of] one-half (50%) of all amounts that the Debtor receives from the items owed to him by Marcia Weber and Patina, Inc., which have been claimed as exempt."

for $166.38. The Trustee's Motion (Main Case Doc. No. 43) to sell the three paintings is unopposed.

The Trustee filed a Motion (Doc. No. 44) to sell twenty-one paintings held by Plaintiff for $200.00 per painting, for a total of $4,200.00, to Marks. An appraisal was conducted and each painting was appraised between $100.00 and $200.00 each. The sale Motion is unopposed.

### Plaintiff's Complaint

Plaintiff filed a five-count Complaint objecting to the Debtor's discharge pursuant to Sections 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4)(A), and (a)(5) of the Bankruptcy Code. The Complaint is a conglomeration of allegations. Plaintiff asserts the Debtor failed to disclose assets, transfers, debts, and his place of residence. Plaintiff has expended considerable energy and resources in pursuing the Debtor. Fleming's testimony was not credible. She would not reveal Plaintiff's actual motivations for pursuing the Debtor with such vigor.

### Venue

Plaintiff asserts venue is improper in this Court because the Debtor resided in Alabama during the 180-day pre-petition period and presented an Alabama driver's license as identification at his Section 341 meeting. The Debtor moved to Sanford, Florida in January 2008. He lives in the apartment provided by Marks and has participated in a year-long drug rehabilitation program in Sanford, Florida. He travelled to Alabama on occasion pre-petition to visit his family and friends. During one of the visits the Debtor was ticketed for a traffic violation.

Plaintiff knew the Debtor had moved to Florida and directed its Patina Litigation communications to Marks. The Trustee testified the Alabama license has no special meaning to her. The Debtor credibly testified he resided in Sanford, Florida for the majority of the 180-day pre-petition period. He made no false statements regarding his residency. The Debtor's residence was Sanford, Florida for the longer portion of the 180-day prepetition period. Venue is proper in this Court.

### *11 U.S.C. Section 727(a)(2)(A)*

Plaintiff asserts Debtor fraudulently transferred approximately sixty original paintings valued at $132,634.00 to Weber within one year of the Petition date and did not disclose the transfer in his Schedules and in Question 3 (Payments to creditors) or Question 10 (Other transfers) of his SOFA. Question No. 10 required the Debtor to:

> List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case.

Plaintiff contends the Debtor, with the intent to hinder, delay and defraud his creditors, concealed paintings at the Jeanine Taylor Folk Art Gallery in Sanford, Florida and with Melvin Richardson in Alabama.

Weber and the Debtor had a business relationship that began in 2001 and were friends. The Debtor paints prolifically and Weber estimates she sold hundreds, possibly a thousand, of his paintings between 2001 and June 2009 (Plaintiff's Ex. 87, p. 210). She, on occasion, returned consigned paintings to the Debtor if they had not sold in several months. She did not keep exacting records of their artwork transactions. She lent the Debtor money for living expenses and provided a place for him to live and paint. She paid expenses for the Debtor of more than $12,070.00 (Plaintiff's Ex. 14).

The Debtor delivered to Weber fifty paintings in March 2008 for an art show in Chicago and thirty-eight paintings in April or May 2008 for an art show in Atlanta (Plaintiff's Ex. 11, 12; Plaintiff's Ex. 87, pp. 167-170). Weber paid him $100.00 per painting, with certain offsets for inventory corrections for a total of $6,930.00 (Plaintiff's Ex. 87, pp. 114-115). The Debtor did not receive any additional funds from Weber for these paintings nor did he expect any due to the living expenses she had paid for him. He did not list these transfers in Schedule B or in his SOFA. He listed in Schedule B the paintings held by Webber on consignment and the account receivable owed to him by Weber.

The Debtor was not required to list the eighty-eight transferred paintings in Schedule B because they did not constitute assets of the Debtor on the Petition Date. He transferred ownership of the paintings to Weber outright in compensation for the living expenses she had paid on his behalf. The paintings were not on consignment; they were the property of Weber.

It, as explained previously, was the Debtor's customary course of dealing to sell paintings in bulk, particularly when a significant art show was scheduled, and he had a course of conduct whereby he would repay those who assisted him with artwork. The Debtor explained he did not list the transfers in Question 3 or Question 10 of his SOFA because he considered the transfers to be within the ordinary course of his business and financial affairs. His testimony was credible. His transfers to Weber were for the Chicago and Atlanta art shows and were to repay her for her assistance. The transfers were consistent with the Debtor's established course of conduct and he was not required to list them in his SOFA.

14

The Debtor did not transfer any paintings to Weber with the intent to hinder, delay or defraud his creditors.   Plaintiff presented no evidence substantiating its allegations the Debtor concealed paintings at any galleries or with Melvin Richardson. Plaintiff did not establish a basis for a denial of the Debtor's discharge pursuant to 11 U.S.C. Section 727(a)(2)(A).

### 11 U.S.C. Section 727(a)(2)(B)

Plaintiff asserts the Debtor, post-petition, transferred nine paintings having a total value of $11,200.00 which are property of the estate.  Plaintiff presented no evidence to support these allegations.  Plaintiff did not establish a basis for denial of the Debtor's discharge pursuant to 11 U.S.C. Section 727(a)(2)(B).

### 11 U.S.C. Section 727(a)(3)

Plaintiff asserts the Debtor has concealed, falsified or failed to keep or preserve any financial records or destroyed such records.  The Debtor is a struggling artist who has been seriously impaired by his addictions.  He has not maintained financial records.  His inability to manage his affairs is so profound, the Alabama State Court placed Mrs. Banks in control of his affairs.  Plaintiff does not have clean hands regarding recording-keeping. Its records of business transactions with the Debtor, consisting mainly of handwritten notes, are imprecise and incomplete.

The Debtor has adequately and convincingly explained his failure to maintain financial records.  His lack of financial records is justified based upon the totality of the circumstances.  He has fully cooperated with the Trustee.  Plaintiff has failed to establish the Debtor's lack of financial records constitutes a basis for the denial of his discharge pursuant to 11 U.S.C. Section 727(a)(3).

*11 U.S.C. Section 727(a)(4)(A)*

Plaintiff asserts the Debtor knowingly and fraudulently made false statements and omissions in his Petition, Schedules, and Statement of Financial Affairs and at his Section 341 meeting of creditors conducted by the Trustee on October 30, 2008:

1. The Debtor listed one bank account in Schedule B, but testified at the 341 meeting he had other accounts.

2. He failed to disclose the transfer of ten paintings to Weber prepetition in his SOFA.

3. He walks everywhere and does not own a car.

4. He receives mail at his attorney's office.

5. His lease agreement with Marks is not listed in Schedule G.

6. His Schedule J expenses of $4,445.00 are not paid by him.

7. He has not listed all known creditors.

8. He has failed to disclose the locations of original paintings being held by third parties.

9. He falsely testified he lived in Florida from January 2008 through the Petition Date.

10. He misrepresented his income for tax year 2007 in SOFA.

11. He misrepresented his income for tax year 2008 in his SOFA.

12. His paintings are being concealed by the Jeanine Taylor Gallery, Melvin Richardson, and Weber.

The Debtor did not knowingly or fraudulently make any false oath or account in connection with his bankruptcy case. He completed his bankruptcy papers to the best of his abilities and recollection. Many of his paintings are simply missing. Those in the possession of Weber and Plaintiff, or their sales proceeds, have been fully accounted for to the Trustee. Mrs. Banks had control of the Debtor's finances and sales proceeds were

often paid directly to her. She supplied all of the financial information to the accountant who prepared the joint Federal income tax returns for tax years 2006, 2007, and 2008. The returns were not available to the Debtor when he completed his SOFA because they were prepared post-petition (Debtor's Ex. 2, 3). The Debtor's income disclosures in his SOFA are his best estimates of his income for 2006, 2007, and 2008.

The Debtor amended his Schedule B to include the Volvo, which was omitted from his original Schedule B through an inadvertent oversight. Despite owning the Volvo he mostly walks and relies on friends for transportation. He failed to list his informal rental agreement with Marks as an executory contract in Schedule G through an inadvertent oversight. The omission of the lease agreement is not a material omission. Plaintiff knew pre-petition the Debtor was living in Marks' building. Marks assists the Debtor with his living expenses and pays many of the expenses listed in Schedule J. The Debtor did not falsely list his expenses.

The Debtor made no fraudulent statements or fraudulent material omissions in his Schedules or SOFA. Plaintiff has failed to establish a basis for denial of the Debtor's discharge pursuant to 11 U.S.C. Section 727(a)(4)(A).

### 11 U.S.C. Section 727(a)(5)

Plaintiff asserts the Debtor failed to explain the loss of: (i) sixty paintings valued at $132,634.00; (ii) proceeds of sales; (iii) income of $92,375.00 for tax year 2007; (iv) income of $61,513.98 from tax year 2008; and (v) the loss of original paintings which could be sold to satisfy his liabilities. These allegations are reconstituted allegations found in Plaintiff's previous counts and are without merit. Plaintiff bases its income loss allegations on the Debtor's and Mrs. Banks' Federal income tax returns. The returns

were prepared post-petition by an accountant pursuant to information provided by Mrs. Banks. The Debtor was not involved in the preparation of the returns. Plaintiff has not established any of the Debtor's income was "lost."

The Debtor's explanations of his assets and the transfers of his paintings were credible. Some of his paintings are missing due to persons who have taken advantage of his situation. He, over the years, gifted many paintings to persons who have helped him. His bankruptcy papers fully and accurately account for the paintings that constituted property of the Debtor or the bankruptcy estate on the Petition Date.

Plaintiff has failed to establish the Debtor formerly owned substantial, identifiable assets that are now unavailable to distribute to creditors pursuant to 11 U.S.C. Section 727(a)(5). The assets in the possession of Weber and Plaintiff have been fully accounted for and liquidated, or will be liquidated, by the Trustee.

Plaintiff has failed to establish a basis for denial of the Debtor's discharge pursuant to Section 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4)(A), or (a)(5) of the Bankruptcy Code. Judgment is due to be entered in favor of the Debtor and against Plaintiff on Counts I through V of the Complaint.

### *Debtor's Counterclaims*

Banks filed a two-count Counterclaim against Plaintiff asserting: (i) Plaintiff willfully violated the automatic stay by proceeding with the Alabama State Court litigation; and (ii) Plaintiff converted twenty-five paintings belonging to Banks or his bankruptcy estate.

#### *Count I: Stay Violation*

The Debtor asserts Plaintiff willfully violated the automatic stay of 11 U.S.C. Section 362(a) by: (i) proceeding with the Patina Litigation after receiving the September 4, 2008 notice of the Debtor's bankruptcy filing; and (ii) appearing at the Debtor's residence in Sanford, Florida with the intent to "harass and annoy" the Debtor (Doc. No. 6).

Plaintiff did not continue the Patina Litigation post-petition. It, upon receipt of Debtor's counsel's September 4, 2008 letter notifying Plaintiff of the bankruptcy filing, filed the Suggestion of Bankruptcy in the Alabama State Court. It took no further action in the Patina Litigation.[3] Wilmoth's post-petition visit to Sanford, while suspicious and not adequately explained, does not constitute a violation of the automatic stay. Wilmoth attended a public, advertised function at the Jeanine Taylor Art Gallery and took pictures of the exterior of Marks' building. He took no action constituting an attempt to collect, assess or recover a debt from the Debtor. He did not harass or threaten the Debtor.

Plaintiff did not take any action in violation of 11 U.S.C. Section 362(a). Judgment is due to be entered in favor of Plaintiff on Count I of the Debtor's Counterclaim.

#### *Count II: Conversion*

The Debtor contends in Count II the Plaintiff has in its possession twenty-five paintings valued at more than $26,000.00 and sale proceeds of $5,175.00 which constitute property of the Debtor and/or the bankruptcy estate. He asserts, despite

---

[3] Plaintiff states in its Complaint it "obtained a Final Judgment in Alabama against Banks on September 10, 2008 because Debtor's Voluntary Chapter 7 Bankruptcy Case was deliberately concealed from Patina, Inc. who expended time and money with their lawyer post-petition at this hearing" (Doc. No. 1, ¶15). No evidence was presented establishing a Final Judgment was entered post-petition.

turnover demands, Plaintiff has refused to return these assets to him. Count II apparently relates to civil conversion, not criminal, which is a state law cause of action. The Debtor did not elucidate the elements of conversion or what state law governs his conversion claim. Count II constitutes a core proceeding and the Court has jurisdiction to determine the conversion claim on the basis it concerns the administration of the estate.

Plaintiff has fully cooperated with the Trustee. The Trustee has initiated no actions against Plaintiff. The account receivable of $5,175.00 owed by Plaintiff to the Debtor constitutes property of the bankruptcy estate which Plaintiff turned over to the Trustee (Plaintiff's Ex. 71). Plaintiff has fully accounted for all of the Debtor's paintings in its possession and the twenty-one remaining paintings in its possession are being sold to Marks pursuant to the Trustee's unopposed sale motion.

The Debtor did not establish Plaintiff converted any assets of the Debtor or the bankruptcy estate. Judgment is due to be entered in favor of Plaintiff on Count II of the Debtor's Counterclaim.

### *Claim Objection*

Plaintiff asserts a general unsecured claim of $119,210.80 for "breach of contract." The claim amount consists of two portions: (i) $13,435.80 from the July 8, 2008 Final Judgment in the Patina Litigation; and (ii) lost commissions of $99,850.00 based upon Wilmoth's Affidavit dated August 29, 2008. Wilmoth asserts in the Affidavit Plaintiff's fifty-percent share of the total sale proceeds would have been $114,000.00 had the Debtor produced paintings to Plaintiff pursuant to their "contract" and the Debtor's alleged verbal commitments. He asserts:

However, for the purposes of Patina's present motion only, it is my opinion that a fair and accurate estimate of the retail proceeds generated by the sale of eighteen (18) 4' x 4' paintings and ninety (90) smaller paintings (the minimum called for by the parties' written contract) would be approximately $153,000.00.   I am also of the opinion that, with Michael Banks' active and good faith participation, gallery sales should have exceeded a minimum of five (5) paintings per month, which would have a retail value in the range of $50,000 - $100,000 or a mid-range of $75,000.00.  These values are based upon an estimated average retail price of $4,000.00 for Mr. Banks' 4' x 4' paintings and an average estimated retail price of $900 for his 2' x 2' paintings, which are consistent with other gallery prices and internet sales listings.

Pursuant to the customary arrangements between Patina, Inc., and Michael Banks prior to the disputes involved in this lawsuit, the proceeds from the sale of Mr. Banks' paintings were to be split 50/50 between Patina, Inc. and Mr. Banks.  Accordingly, Patina, Inc.'s share of the total proceeds described above would be approximately $114,000.00.

(Claim No. 8-1, Affidavit at p. 2).  Plaintiff seeks the sum of $99,850.00 ($114,000.00 less a setoff of $5,775.00 for the account receivable owed to the Debtor) for lost profits from the alleged breach.  (Id.).

The Debtor objects to Plaintiff's claim asserting the May 9, 2007 agreement is unenforceable because:  (i) no consideration was paid to the Debtor; (ii) Wilmoth lacked legal authority to execute it on behalf of Plaintiff; (iii) it was procured by fraud and undue influence over the Debtor; and (iv) Plaintiff committed a prior material breach.  The Debtor asserts the damages claim is too speculative and uncertain to be recoverable (Doc. No. 33).  The Debtor conceded Plaintiff has an allowed general unsecured claim of $13,435.80 based upon the Judgment.  He requests the remainder of the claim be disallowed.

Plaintiff asserts Debtor lacks standing to object to its claim because no money will flow to him from the estate.  The Debtor has standing to object to the claim because

there is a reasonable possibility disallowance of the claim, or a significant portion of it, will result in a surplus after distribution. He has a pecuniary interest in the estate.

Plaintiff has not established the May 9, 2007 agreement constitutes a binding contract. Substantial questions remain whether the Debtor had the capacity to enter into the agreement and if he executed the agreement under duress. The agreement, ultimately, is not enforceable because it violates the January 22, 2007 Settlement Agreement and June 6, 2007 Judgment of Legal Separation. Mrs. Banks was a necessary party to the May 9, 2007 agreement. Plaintiff knew Mrs. Banks had been granted control of the Debtor's finances, but did not make her a party to the agreement.

Plaintiff's lost profit assertions are unsubstantiated, exaggerated, and based upon an unenforceable agreement. They are contrary to Plaintiff's financial history. Fleming testified Plaintiff, in its best year, received gross income of $200,000.00 generated from the sales of *all artists* represented by Plaintiff. Plaintiff has never received annual gross income in excess of $200,000.00. Plaintiff's contention it would have received gross income of $228,000.00, and net revenues of $114,000.00, from the sales of the Debtor's artwork is speculative and without basis.

The Debtor's objection to Claim No. 8-1 is due to be sustained in part. Plaintiff holds an allowed general unsecured claim of $13,435.80 pursuant to the July 9, 2008 Order and Final Judgment entered by the Alabama State Court. The balance of its claim, $105,775.00, is due to be disallowed.

## CONCLUSIONS OF LAW

The Plaintiff seeks denial of the Debtor's discharge pursuant to 11 U.S.C. Sections 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4)(A), and (a)(5).    Objections to discharge

are strictly construed against the objecting party and liberally in favor of the debtor. Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986). "[T]he reasons for denying a discharge must be real and substantial, not merely technical and conjectural." Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 304 (11th Cir. 1994).

### *Venue*

Section 1403 of Chapter 28 of the United States Code provides a bankruptcy case "may be commenced in the district court for the district—"

> In which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district.

28 U.S.C. § 1408(1). "A bankruptcy case is presumed to have been filed in the proper venue." In re Cauley, 374 B.R. 311, 314 n.3 (Bankr. M.D. Fla. 2007).

The Debtor moved to Sanford, Florida in January 2008 and resided in Sanford for the longer portion of the 180-day pre-petition period. The Debtor meets the venue requirement of 28 U.S.C. Section 1408(1). Venue in this Court is proper in this Court. 28 U.S.C. § 1408(1). Plaintiff's venue objection is due to be overruled.

### *11 U.S.C. Sections 727(a)(2)(A) and 727(a)(2)(B)*

Section 727(a) of the Bankruptcy Code sets forth the Debtor shall be granted a discharge unless certain abuses have been committed by him. A discharge will be denied where:

23

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
>> (A) property of the debtor, within one year before the date of the filing of the petition; or
>> (B) property of the estate, after the date of the filing of the petition.

11 U.S.C. §§ 727(a)(2)(A), (a)(2)(B).

Plaintiff bears the significant burden of establishing actual fraudulent intent. Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 306 (11th Cir. 1994) (*citing* Wines v. Wines (In re Wines), 997 F.2d 852, 856 (11th Cir. 1993)). Constructive fraud is not adequate. Id. "Concealment under this section occurs when a debtor's interest in the property is not obvious, but the debtor continues to reap the benefits the property has to offer." In re Greene, 340 B.R. 93, 98 (Bankr. M.D. Fla. 2006) (*citation omitted*). Grounds for the denial of a discharge do not exist where a debtor completes his bankruptcy papers to the best of his abilities and attempts to be complete and accurate. In re Burns, 395 B.R. 756, 769 (Bankr. M.D. Fla. 2008).

The Debtor completed his Schedules and SOFA to the best of his abilities and tried to be complete and accurate. When more information was available to him he filed amendments. Mrs. Banks controlled his finances and his income disclosures in his SOFA were his best good faith estimates of his income. The tax returns were not available to him because they were prepared post-petition.

He listed the paintings held by Weber on consignment, the paintings held by Plaintiff, and accounts receivable. The eighty-eight paintings he transferred to Weber pre-petition are not property of the Debtor or the estate. He retained no ownership interest in the paintings; they are the property of Weber. The transfers were consistent

with his established course of dealings. He transferred the paintings to Weber in the ordinary course of his business and was not required to disclose the transfers in his SOFA. He did not make any misrepresentations or fraudulent statements in his Schedules or SOFA. He, throughout these proceedings, has made no attempt to evade or deceive his creditors. He has been forthright and cooperative.

The Debtor did not transfer any paintings with the intent to hinder, delay or defraud his creditors. He did not conceal any paintings at any galleries or with Melvin Richardson. He did not transfer any paintings constituting property of the estate post-petition. Plaintiff did not establish a basis for a denial of the Debtor's discharge pursuant to 11 U.S.C. Section 727(a)(2)(A) or Section 727(a)(2)(B).

### *11 U.S.C. Section 727(a)(3)*

Section 727(a)(3) of the Bankruptcy Code provides the Court shall grant a debtor a discharge unless:

> the debtor has concealed, destroyed, mutilated, falsified or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case. . . .

11 U.S.C. §727(a)(3). The purpose of Section 727(a)(3) is to make certain the creditors and the Trustee are given sufficient information to understand the debtor's financial condition. In re Juzwiak, 89 F.3d 424, 427 (7th Cir. 1996). The Debtor must justify a lack of adequate record keeping. 11 U.S.C. § 727(a)(3); Meridian Bank v. Alten, 958 F.2d 1226, 1234 (3d Cir. 1992). Each case must be determined on its own facts and the level of a debtor's business acumen and sophistication are relevant. In re Milam, 172 B.R. 371, 375 (Bankr. M.D. Fla. 1994); Meridian Bank, 958 F.2d at 1231.

The Debtor has kept few business records documenting his financial dealings. He has been severely impaired by his difficulties and his wife was placed in control of his finances by the Alabama State Court. None of the galleries he dealt with, and Plaintiff in particular, kept adequate, complete records of their transactions with him. Plaintiff, from the start of its relationship with the Debtor, has had full knowledge of his financial situation. The Debtor gave a full and accurate account of his financial affairs in his bankruptcy papers and to the Trustee.

The Debtor's lack of record keeping is justified based upon his circumstances. Meridian Bank, 958 F.2d at 1231. Plaintiff did not establish a basis for a denial of the Debtor's discharge pursuant to 11 U.S.C. Section 727(a)(3).

### *11 U.S.C. Section 727(a)(4)(A)*

Section 727(a)(4)(A) of the Bankruptcy Code provides the Court shall grant the debtor a discharge, unless "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account." 11 U.S.C. § 727(a)(4)(A). The party objecting to discharge in a Section 727(a)(4)(A) proceeding must establish the debtor made a false oath knowingly and fraudulently. Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 619 (11th Cir. 1984). A discharge should be denied where an omission is both fraudulent and material. Swicegood v. Ginn, 924 F.2d 230, 232 (11th Cir. 1991); In re Chalik, 748 F.2d at 618. "Discharge may not be denied where the untruth was the result of mistake or inadvertence." Keefe v. Rudolph (In re Rudolph), 233 Fed. Appx. 885, 889 (11th Cir. 2007) (*citation omitted*).

The Debtor did not knowingly or fraudulently make any false oath or account in connection with his bankruptcy case. He completed his bankruptcy papers to the best of

his abilities and recollection.  All of his assets have been fully listed and accounted for to the Trustee.  His failure to list the Volvo in his original Schedule B and his lease agreement with Marks in Schedule G were inadvertent oversights.  He amended his schedules to correct these oversights.  He made no misstatements in his Petition.

The Debtor made no fraudulent statements or fraudulent material omissions in his Schedules, SOFA, or Petition.  Plaintiff has failed to establish a basis for denial of the Debtor's discharge pursuant to 11 U.S.C. Section 727(a)(4)(A).

### *11 U.S.C. Section 727(a)(5)*

Section 727(a)(5) of the Bankruptcy Code provides for the denial of a discharge where:

> the debtor has failed to explain satisfactorily, before determination of denial of discharge, under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

11 U.S.C. § 727(a)(5).  Plaintiff has the initial burden of establishing its Section 727(a)(5) objection to discharge.  Hawley v. Cement Indus., Inc. (In re Hawley), 51 F.3d 246, 249 (11th Cir. 1995).  Plaintiff, to sustain the initial burden, must establish "the debtor formerly owned substantial, identifiable assets that are now unavailable to distribute to creditors."  Murphy v. Rivertree Landing, LLC (In re Murphy), Case No. 6:08-cv-198-Orl-31, 2008 WL 2224835 *5 (M.D. Fla. May 27, 2008).  The burden then shifts to the Debtor to satisfactorily explain the loss.  In re Hawley, 51 F.3d at 249.

Whether a debtor has satisfactorily explained a loss of assets is a finding of fact.  Id. at 248.  "To be satisfactory, an explanation must convince the judge . . . . Vague and indefinite explanations of losses that are based upon estimates uncorroborated by

27

documentation are unsatisfactory." In re Chalik, 748 F.2d are 619 (*internal citations omitted*).

The assets in the possession of Weber and Plaintiff have been fully accounted for and liquidated by the Trustee. The Debtor's income disclosures are his best estimates of his 2006, 2007, and 2008 income. The eighty-eight paintings transferred to Weber prepetition are assets of Weber, not the Debtor or the estate. There are no "lost" assets or income as Plaintiff asserts. Plaintiff has failed to establish the Debtor formerly owned substantial, identifiable assets that are now unavailable to distribute to creditors. Plaintiff has failed to establish a basis for denial of the Debtor's discharge pursuant to 11 U.S.C. Section 727(a)(5).

## Debtor's Counterclaims

### Count I: Violation of the Automatic Stay

The Debtor has the burden of proof to establish Plaintiff violated the automatic stay of 11 U.S.C. Section 362(a) and its violation was willful. Hardy v. I.R.S. (In re Hardy), 97 F.3d 1384, 1390 (11th Cir. 1996). Plaintiff took no action against the Debtor post-petition in violation of the automatic stay. The Debtor has not established Plaintiff violated the automatic stay.

### Count II: Conversion

The Florida Bankruptcy Courts apply the state law definition of conversion in addressing conversion allegations. In re Jacobs, 243 B.R. 836, 846 (Bankr. M.D. Fla. 2000). Neither party raised the issue of whether Florida or Alabama law governs the Debtor's conversion allegation. The Florida and Alabama courts recognize the common law tort of conversion and the elements to establish conversion in each jurisdiction are

similar. City of Cars, Inc. v. Simms, 526 So.2d 119, 120 (Fla. 5th DCA), *rev. denied*, 534 So.2d 401 (Fla. 1988) ("[C]onversion occurs when a person asserts a right of dominion over chattel which is inconsistent with the right of the owner and deprives the owner of the right of possession."); SouthTrust Bank v. Donely, 925 So.2d 934, 939 (Ala. 2005) ("To establish conversion, one must present proof of a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property.").

The Debtor has not established the elements of conversion pursuant to either Florida or Alabama law. He did not establish Plaintiff converted assets of the Debtor or of the estate. Plaintiff turned over to the Trustee the account receivable funds and the twenty-one paintings in its possession are being sold pursuant to the Trustee's sale motion. Judgment is due to be entered in favor of Plaintiff and against the Debtor on Counts I and II of his Counterclaim.

### *Claim Objection*

The Debtor has standing to object to Claim No. 8-1 because there is a reasonable possibility disallowance of the claim, or a significant portion of it, will result in a surplus after distribution. He has established he has a pecuniary interest in the estate. In re Cult Awareness Network, Inc., 151 F.3d 605, 608 (7th Cir. 1998); In re Walker, 356 B.R. 834, 848 (Bankr. S.D. Fla. 2006).

Plaintiff has established, and the Debtor has conceded, it holds an allowed general unsecured claim of $13,435.80 pursuant to the July 9, 2008 Order and Final Judgment entered by the Alabama State Court. The balance of Plaintiff's claim is based upon an

unenforceable agreement, is unsubstantiated, speculative, and contrary to Plaintiff's income history. The balance of the claim is due to be disallowed.

### Conclusion

The Debtor has had many difficulties. He has been beleaguered by Plaintiff whose pursuit of him has been intense. He sought bankruptcy protection as a last resort to obtain a fresh start. He filed his case in good faith and has acted in good faith throughout. He is an honest debtor who is entitled to a fresh start.

A separate judgment consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 17th day of December, 2009.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge